We'll call the next matter for argument, which is Countryway Insurance versus Slagenhoop or Slagenhelp. Good morning, Your Honors. My name is Louis Long and I represent Countryway Insurance Company. In this case, I would like to reserve two minutes for rebuttal, if I may. Granted. This is an insurance coverage dispute involving a farm owner's insurance policy that contained a vehicular use exclusion. Mr. Long, let me ask you this right out of the box. As the district court wrote in its opinion, the question then is whether the insured used the motorized vehicle. I don't understand why that is the question. I don't either, Your Honor, because there's nothing in the policy language that says that the use must be by the insured. And it's my position in this case. In part, we're arguing over a prepositional phrase of the absence. That's one of the issues that the district court decided adversely to me. Correct, Your Honor. If I may address that point directly, I believe that it violates the fundamental rule of contract interpretation to impose the requirement of insertion of that phrase by the insured. The language of the exclusion negates coverage for use of a motor vehicle. Well, wait a minute. Let me go back there. Can we agree that when read literally, this exclusion makes no sense? I mean, can a bodily injury result from liability imposed by law? I do agree that there is some troublesome aspect of that language, Your Honor, but it was not dispositive of the case. Well, what do we do when we're confronted with a provision, an exclusion, which read literally makes no sense at all? Well, the way I would reconcile that, Your Honor, would be, as I did in my brief, parse down the language of the exclusion and look at the constituent elements of it. I think the intent of the exclusion is clear. The intent of the exclusion was to negate coverage for vehicular incidents. And I think if the court goes past that phrase that you have focused upon, Your Honor, that no one else has focused upon as being a basis for finding ambiguity in policy. The district court did not raise that point. Is that correct? That's correct, Your Honor. That in itself does not make it ambiguous, you're saying. It does not. Or make it invalid. That's correct, Your Honor. And I would supplement that argument by pointing out that the phrase liability imposed by law upon the insured has become a bit of a cottage phrase or term of art in the insurance industry, meaning tort liability as opposed to breach of contract or things of that nature. So I would submit that the intent of the exclusion is to include tort liability for bodily injuries resulting from the use of the motor vehicle. And the use term I think is important here because use is also a term of art in insurance policies. And often courts see exclusions written in terms of maintenance operation or use or ownership sometimes is plugged into the exclusion. And none of those other words appear here. It is just use. And I would submit that the absence of the word ownership takes away from the district court's analysis here because if the insurance company meant for ownership to be important, the insurance company would have used the word own or ownership or some cognate of that in the exclusion. And here I will use to my advantage a different exclusion in the policy. When the court considers exclusion C, which I've quoted in my brief because it was a point raised by opposition in the lower court, exclusion C does use those other words that I've just mentioned, including the word ownership. Yeah, but exclusion C has different language. That's correct, Your Honor. And the point I'm making is that if ownership was important for exclusion C and exclusion F, the insurance company would have used ownership in both exclusions, but it did not. Yeah, but you're arguing that they knew how to write one where it was ownership, but that may not necessarily get them out of the argument that the exclusion F here is ambiguous. I'd also submit, Your Honor, that there's no ambiguity by using only the term use because the legion of cases, including a significant body of cases from Pennsylvania, have applied use exclusions in contexts similar to this and have found the exclusion to be enforceable and have denied coverage. I'm talking about the Palayan line of cases. I argued the Palayan case before the Superior Court back in 1982 when I was just a young pup, and the Superior Court adopted the position for Pennsylvania in that case that use exclusions will bar coverage when someone entrusts a motor vehicle to another person. Now, the other side argues back here in this case, well, this isn't a negligent entrustment case. Pish posh. Look at illustrations 6 and illustrations 4 to the restatement sections that are involved here. They say this is a section 302A case, not a section 308 case. 308 is the seminal provision of the restatement second of torts dealing with negligent entrustment claims. When you look at illustration 6 to section 302, as an application of the principle in that section, A lends his car to B to drive on a pleasure trip. A knows that B is an incompetent and habitually careless driver whose license to drive has been revoked for negligent driving. B negligently drives the car and injures C. A is negligent towards C. Classic negligent entrustment fact pattern. Now, let's go to section 308 of the restatement second of torts and look at illustration number 4. It's written a little shorter, but it still is a negligent entrustment claim. A lends his automobile to B whose license has, to A's knowledge, been revoked for reckless driving. Sounds pretty similar, doesn't it? B drives the automobile negligently, pretty similar there too, running down C. A is negligent towards C. So both illustrations, under both sections of the restatement, make clear that these are logically related tort causes of action requiring the use of the motor vehicle. And I submit that the very proof of the tort that was pled against Mr. Slagenhop activates the use exclusion of this policy. Furthermore, the lack of ownership as being a relevant factor was demonstrated by a case that was cited in the district court by both parties, the Erie v. Transamerica case that was decided by the Superior Court. That case involved a child who gained access to a car owned by a visitor to the child's household. The child unwittingly activated the car. The car rolled down the hill and injured a person. And the Superior Court in that case held that was still within the use exclusion of the parent's homeowner's policy in that case. Although the Supreme Court went on to reverse the Erie case on different grounds, it did not reverse the Superior Court's interpretation of the use clause or its application of the use clause to the non-owned vehicle, nor did it impose any ownership requirement as a condition preceding to the application of that exclusion. In summation on this point, to require use by the owner is to rewrite the exclusion, something that no court is permitted to do. I also submit that there's no ambiguity in the exclusion concerning the absence of the language arising out of. What would that add? The district court discussed that, as you know, and saw some potential anyway for arising out of language to clarify. I don't think you said categorically would. I think you said may. What would that do here? Arising out of language. Well, the purpose of that language, as I understand it, Your Honor, is to require a nexus or a connection causally between the vehicle and the injury. In contradistinction to a situation, and I realize I'm going beyond the facts of this case to deal with a hypothetical situation, but suppose an individual is sitting in a car and a hunter in the field fires a gun and the bullet comes through the car. So he's sitting in a car that he's not operating. Nor is it using the vehicle. Right. Yes. And what I submit is that the arising from language requires that the, in essence requires that the vehicle be in motion, that the vehicle be part of the facts which give rise to the injury and give rise to the liability. And even though those magic words arising from or arising out of are not in our exclusion, I'd submit that the causal connection is nonetheless present in our policy language because, and I believe I can point to two different aspects of our exclusion which tie in the causal connection between the injury and the vehicle. First of all, the exclusion requires that the bodily injury, passing over your phrase, Judge Stapleton, results from, and I say I submit to the court that results from is pretty close to arising from or arising out of. But going beyond that, what must it result from? It must result from liability for the use of the vehicle. So I'd submit that the word for, for the use of the vehicle, also ties in the vehicle causally to the cause of action. So the vehicle remains a sine qua non of the causative change. Exactly, Your Honor. And that's the rationale of the negligent entrustment claims as well. And because without the use of the vehicle, you don't have a causal connection between the negligent act, the exercise of bad judgment by the insured in either giving the driver the car keys or telling him to do something that requires the use of the motor vehicle. And in this case, we do have that connection here. We do have that causal connection. Because without the son telling the father, go deliver that tire, the accident never happens, the son could never be held liable, because just putting the tire into the truck wasn't tortious. It wasn't a complete tort. It didn't result in any injury until that truck left the premises. And why did that truck leave the premises? The truck left the premises because the insured, the son, said, dad, go take that tire. Actually, I believe the words were, there you go, pap. And he sent him on his way. Do I understand that you also raised an issue of timely and sufficient notice in this case that the district court did not reach? That was pled, Your Honor. But the only issues that were raised on the cross motions for summary judgment was the vehicular use. I knew I had seen it in the previous case. Yes, that's correct. And if the case had gone beyond the summary judgment motions that were presented, I do not think that we would have pursued late notice as an issue in the case. With that, Your Honor, I will come back for rebuttal. But I would ask the court to reverse. Thank you. Thank you. Mr. Donahoe. Please, the court. Robert Donahoe. I represent Dustin Sams, the appellee in this case. I would like to just initially very briefly review with the court the standard for determining insurance coverage disputes. When the insurance company denies coverage based upon an exclusionary provision, it has the burden of proof. And where there are clauses that attempt to accept coverage, they are to be interpreted narrowly and against the insurer. And contracts of insurance have been deemed by courts to be contracts of adhesion. And where there is an ambiguity in that policy, it is to be resolved in favor of coverage and against the insurer. Let me stop you right there. Your oral help me here. Your brief, the argument heading is, a policy provision which excludes coverage for use of a vehicle is ambiguous. Now, why, what's ambiguous about a policy provision which excludes coverage for use of a vehicle? Maybe broader than you'd like it to be, but is it ambiguous? Well, where the policy provision says that it's liability imposed by law on an insurer for the use of a vehicle, I suggest to the court that it becomes ambiguous. Because when you look at the use of a vehicle, as Mr. Long has argued in his case, he relies upon the negligent entrustment cases. In those cases, I submit there's no ambiguity, because as the courts have reasoned in those cases, there's a concurrence of the dual elements of my vehicle entrusted to you, and you use the vehicle. The courts in all the negligent entrustment cases have looked at that and said that you can't separate those dual elements. But I think in this case, it is ambiguous, because where the liability is to be imposed by law, it is under Restatement 302A. And that is for liability for delegating a task. That's where the liability arises. And, Your Honor, in determining whether or not there's an ambiguity, you have to look at the context of the policy and the particular set of facts. And that's the last criteria for determining whether or not there is an ambiguity. So if we look at the context of this policy, it's a very simple paragraph. It's in Appendix 90. It provides liability coverage to an insurer. That paragraph is then followed by 24 paragraphs over four pages, which limit the coverage which is provided in that initial paragraph. And in this particular case, it's Paragraph F, which is the one I just recited, which is to impose liability by law on an insurer for the use of the vehicle. Well, are we imposing liability upon Paul Sloggenhop for using a vehicle? I suggest to the Court we're not. We're imposing liability on Paul Sloggenhop for delegating a task to his father when he knew or should have known that that was going to expose someone else to an unreasonable risk of harm. What's the risk? The risk is that he's not going to be able to affect that delivery of the tire, the use of the vehicle. Clearly, Walter Sloggenhop used the vehicle in this case, no question about it. Had Walter, Walter being the father, I'm using first names because they both have, Walter's the father and Paul's the son. Had Paul given Walter the car, then we would have all these negligent entrustment cases. If Paul had engaged him as his agent with the respondeat superior theory, which we all know under the restatement of torts for agency, imputes the use to the master, there would be use. We don't have that in this case. Lastly, we don't have Paul exercising any control over Walter in this case. I submit to you, what if instead of Paul asking Walter to deliver this tire, Paul had asked Walter to remove a tree from the side of the road, and Walter goes into his garage and gets a saw. He saws the tree down, and as it falls, it crosses the highway on Route 58 in Clarion, right in front of Dustin Sand. Would we say in that case that Paul used the saw? I don't think so. Clearly, Paul sets into motion what occurs, but is that when you narrowly interpret the term use in the policy, and they're the masters of their own fate. They drafted this policy. They chose the language, and if it's interpreted narrowly, and an ambiguity is construed against the insurer, there's no use in this case, or at best, it's ambiguous. Now, when you look at these negligent entrustment cases, and the Paul case is a very interesting case, because you have an employer engaging an employee who, in the course and scope of his employment, hits somebody, and there's a policy provision that says there's an exclusion for any accident. The policy exclusion was for arising out of, which is the question Judge Smith, you raised. So you've got employer-employee, course and scope of employment, and language that says arising out of. None of those facts exist in this case, and you don't have the legal reasoning, which I alluded to earlier, which is the concurrence of those two elements, entrustment of the vehicle and use of the vehicle. They're inseparable. There was no vehicle in this case provided by the court. But was that the rationale of the court in that case? The court in that case said, although the act of negligently entrusting a vehicle is an essential, if not primary element of the tort, liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury. Yes, that's correct, Your Honor. And doesn't that read on this case? Doesn't that indicate that this is within the meaning of an exclusion? In this case, Your Honor? Yes. I don't think so because in that case there's the negligent entrustment of the instrumentality that causes the injury. In this case, Paul Sagan Hobb did not provide the vehicle. So I think in the entrustment cases, the use and the entrustment are, as the word uses, a concurrence of those events. And we don't have that in this case because all he does is puts the tire in the vehicle and says, there you go, pap, go get her fixed. Doesn't exercise any control over him. Doesn't give him the vehicle to do it. He's not engaged in it as an employee. So I submit that there's negligence entrustment cases on their facts, every one of them on their facts, and in the legal reasoning are distinguishable from the case that we have before you here today. Mr. Donahue, in interpreting Pennsylvania law and how the Pennsylvania courts have looked at similar exclusions, what about the case of Erie v. Transamerica? Wasn't that exclusion remarkably similar to this and didn't the Pennsylvania court rule that that exclusion applied? Actually, it ruled Erie v. Transamerica, where the three-and-a-half-year-old gets into a vehicle, and the Supreme Court in that case said that that three-and-a-half-year-old's operation of the vehicle did not constitute use. So therefore, the homeowner's exclusion, which excluded the use of the vehicle, was not applicable because it cannot be said that a three-and-a-half-year-old uses a vehicle because there has to be some intentional conduct and you can't impute that intentional conduct to a three-and-a-half-year-old. So I suggest, frankly, Your Honor, that that case supports my proposition because you can clearly say that in the practical sense, that three-and-a-half-year-old used the vehicle, he set it into motion, he operated it, and yet the Supreme Court in that case is saying that that's not use of the vehicle. So I submit, and we both have cited that case, I submit that it actually supports our position that you can't use the term use to necessarily mean what the homeowner's exclusion would say. There's an ambiguity there. So I think, Your Honor, frankly, that case is favorable. It's healthier than the other side. Right. In looking at these, Ms. Donahue, one other question, in looking at these exclusions, looking at the, you cited our review and how we should look at insurance policy, but don't we have an obligation to look at the insurance policy as a whole? Yes, absolutely. Isn't the existence of exclusion C something we should take into consideration when looking at exclusion F? Well, frankly, yes, and you should look at all 24 exclusions. Understood, understood. Yeah, but it's limited for a second. Right. Isn't the fact that it's clear that the insurance company knows how to limit an exclusion where the use is ownership use, shouldn't that be taken into consideration here? I'm not arguing that ownership is necessary under subsection F, Your Honor. I don't think that that's the case because you can have under subsection F the exclusion for an agency theory. You can have under subsection F exclusion for the negligent entrustment. Yeah, but to get to the ambiguity, isn't one of the interpretations that this meant that the insured had to be the owner under F? No, I don't think so, Your Honor. What other reasonable interpretation is there that would make this exclusion provision ambiguous if it didn't include the ownership aspect by the insured? What else would make it ambiguous? What other reasonable interpretation is there then? The one interpretation is that the exclusion only applies, the exclusion applies if a motor vehicle is used. That's one reasonable interpretation. Correct. I would posit that a second reasonable interpretation would be that the exclusion applies if, in fact, there is liability imposed upon the insured for using a motor vehicle. Correct. Okay, so you then have two reasonable interpretations, and to my understanding, that gives you an ambiguity. That's correct. Now, but you said you weren't arguing that, in fact, there's a reasonable interpretation of ownership by the insured. What other interpretation is there that creates the ambiguity then? Well, Your Honor, ownership is covered in subsection C. Correct. Right. So what the insurance company, I believe, is setting out to do in subsection F is to further broaden the exclusion, and yet when they say that the liability imposed by law for the use, as the lower court says, well, whose use? Is it necessarily the insured's use, or can it be someone else's use? Are you imputing someone else's use? And the simplest way to have resolved all this is maybe not perhaps with the insured instead arises out of the use, but if it simply had said arises out of a motor vehicle accident, we wouldn't be here. But they chose to say liability imposed by law for the use of a vehicle. Now, what is the use of a vehicle? In this case, applying the particular set of facts in this case, can we say that Paul Slogginhop used a motor vehicle? We can say he used his father, and his father used a motor vehicle, and perhaps that set into motion what occurred, but the term use, which was selected by the insurance company, is ambiguous as to whether or not, in the particular set of these facts, Paul used it. And if you go back to the criteria, which is that the insurance company has the burden of proof, that provision is to be narrowly interpreted, and any ambiguity is to be resolved in favor of coverage, then I submit to you that the summary judgment below was correct. Thank you. Thank you, Your Honors. There is no SAW exclusion in this policy. There is a vehicular exclusion, vehicular use exclusion. And I think Mr. Donahoe's example of the SAW demonstrates the fallacy in the plaintiff's argument in this, plaintiff, I'm referring to the tort plaintiff, his argument for coverage in this case. Try as they might, they tried to drive a wedge between the judgmental act of sending the father to deliver the tire and the use of the automobile. They can't drive that wedge between those two facts, because the simple act of asking the father to deliver the tire was not an actionable tort until the father used the vehicle, as Your Honor quoted from the Palayan case. So they can't separate the use of the vehicle from their very cause of action upon which they rely. And the use of the vehicle is what triggers the exclusion in this case. Employment is not a factor. Employment was not a factor in the Palayan case. Employment is not a factor, and the proof that employment is not a factor in the application of the exclusions comes from Erie v. Transamerica, Nationwide v. Wiltshire, and Culp v. Nationwide, or Nationwide v. Culp, I may have the name of those cases. None of those homeowner-type cases, Palayan being a business case, but Erie, Culp, and Wiltshire are all homeowner's cases which involve no employment connection between the person who exercised the bad judgment and the person who operated the vehicle. Employment is not a factor. Use is the factor. We exclude use, and on that basis, the Court shall reverse. Thank you. Thank you. Thank you. We thank both counsel for their helpful arguments. We'll take the matter under review.